O

# United States District Court
# Central District of California

| | |
|---|---|
| GUSTAVO RODRIGUEZ CASTILLO,<br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>KIRSTJEN NIELSEN, Secretary, Department of Homeland Security, et al,<br><br>Defendants-Respondents. | Case No. 5:18-cv-01317-ODW (KESx)<br><br>**AMENDED ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES [49]** |

## I. INTRODUCTION

Before the Court is a Motion for Attorneys' Fees ("Motion") filed by Plaintiffs Gustavo Rodriguez Castillo ("Castillo"), Gabriela M. Lopez ("Lopez"), and Immigrant Defenders Law Center ("IDLC") (collectively "Plaintiffs") seeking $190,718.89 in fees and costs from Defendants pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (*See* Mot., ECF No. 49.) For the reasons discussed below, the Court **GRANTS** Plaintiffs' Motion.

## II. BACKGROUND

The Court recited this case's facts in its Temporary Restraining Order and Order to Show Cause ("TRO") and incorporates that discussion here. (*See* TRO, ECF No. 10.) Plaintiffs brought this action on June 19, 2018, to challenge practices concerning civil immigration detainees held at FCI Victorville Medium Security

Prison ("FCI Victorville"), a federal correctional facility used to house convicted criminals. (*See generally* Compl., ECF No. 1.) On or about June 4, 2018, the Bureau of Prisons ("BOP") received hundreds of immigration detainees for temporary housing in FCI Victorville. (Compl. ¶ 17; *see also* Decl. of Jess Pino ("Pino Decl.") ¶ 3, ECF No. 7-1.) The federal government began transferring detainees to FCI Victorville on or about June 8, 2018. (Compl. ¶ 19.)

Detainees were incarcerated pending a screening known as a "credible fear" interview and, if found to have a "credible fear," pending immigration court proceedings. (Compl. ¶ 20.) Due to the volume of detainees, medical screenings, and other administrative tasks, Defendants did not finalize attorney visitation procedures until June 19, 2018. (Pino Decl. ¶ 5.) Consequently, detainees at FCI Victorville could not consult an attorney before June 19, 2018. (Compl. ¶ 22.)

Here, Castillo was held as a detainee, Lopez served as Castillo's attorney, and IDLC is a nonprofit organization that provided legal services to detained immigrants. (Compl. ¶¶ 5–7.) On June 19, 2018, Plaintiffs filed their Complaint and sought a TRO. Plaintiffs' Complaint alleged that Defendants' denial of attorney access violated their due process rights and First Amendment rights, and Defendants' policies regarding access to attorneys violated the Administrative Policy Act and the Immigration and Nationality Act. (Compl. ¶¶ 52–69.) Plaintiffs' TRO sought to: (1) permit Lopez to meet with Castillo; (2) permit other detainees at FCI Victorville to communicate with attorneys; (3) permit the IDLC to conduct "know your rights" training for the detainees at FCI Victorville; and (4) stop immigration proceedings at FCI Victorville, or deportation of any such detainees, until they could consult an attorney and attend an IDLC training. (S*ee* Pls.' Ex. Parte Appl. ("Ex Parte"), ECF No. 4.)

Defendants opposed on June 20, 2018. (Opp'n to Ex Parte, ECF No. 7.) Defendants affirmed that they were "acutely aware of the need to allow" attorney visitation and that it had "now implemented procedures" for attorneys to visit with

2

detainees.  (Pino Decl. ¶ 7.)  Defendants also provided details concerning the implemented procedures for attorney visitation.  (Pino Decl., Ex. A ("Mem. for FCI").)  Namely, Defendants' new policies permitted attorney visitations to occur in a single visitation room, Tuesday through Friday from 8:30 a.m. to 3:00 p.m., and only if the visiting attorney and individuals accompanying the attorney successfully completed the necessary paperwork.  (Mem. for FCI.)  In their reply, Plaintiffs argued these policies did not ensure sufficient visitation, provide adequate "know your rights" training, or guarantee that Defendants would not proceed with detainees' cases until they had access to counsel.  (Reply to Opp'n to Ex Parte, ECF No. 8.)

On June 21, 2018, the Court issued the TRO and an order to show cause why a preliminary injunction should not issue.  (TRO 7.)  The TRO decided that in-person communications may proceed according to the protocols Defendants provided and required Defendants to:

**(1)** Permit Lopez to conduct an attorney-client conversation with Castillo;

**(2)** Permit other FCI Victorville detainees to communicate with attorneys;

**(3)** Permit IDLC to conduct "know your rights" trainings at FCI Victorville; and

**(4)** Refrain from immigration proceedings or deportations until detainees could consult an attorney or attend "know your rights" training.

(TRO 6–7.)

In their Response and Request to Dissolve the TRO, Defendants argued "there is a perfectly valid and reasonable explanation for" initially denying attorney access and then allowing restricted visitation: "[n]amely, the facility only just began housing immigrants immediately prior to the outset of the litigation."  (Defs.' Resp. and Req. Dissolve TRO ("Resp.") 18, ECF No. 20.)  Yet, Defendants did not address Plaintiffs' allegations concerning their due process or First Amendment claims.  (Resp. 18.)

Thereafter, the Court held a hearing on the order to show cause on July 30, 2018. (Min. of TRO Hr'g, ECF No. 22.)  After being updated on Defendants' lack of progress, the Court told the parties "we're going to make meaningful progress or I am

3

going to draft a preliminary injunction." (*See* Decl. of Michael Kaufman ("Kaufman Decl."), Ex. F ("Hr'g Tr.") 39, 48, ECF No. 54-1.)  Defendants assured the Court that they would make progress in satisfying the conditions of the TRO and not "simply move people to Adelanto [to] fast track removal proceeding[s]," and thus would not require a court issued preliminary injunction. (*See* Hr'g Tr. 40.)

The parties then stipulated to extend the TRO for two weeks to pursue settlement, and later stipulated to extend the TRO two more times. (ECF Nos. 23, 28, 34.)  The parties then came to an impasse and stipulated on August 27, 2018 to extend the TRO pending the Court's consideration of whether a preliminary injunction should issue. (ECF No. 37.)  The Court approved the parties' stipulation and ordered them to file a joint status report concerning whether a preliminary injunction should issue. (ECF No. 38.)  The parties filed their joint status report on August 29, 2018. (Status Report, ECF No. 39.)  In the report, Defendants: (1) noted that FCI Victorville had decreased its detainee population to 202 and taken no new detainees since July 24, 2018; (2) described new visitation policies and implementation of Court-ordered "know your rights" training; and (3) concluded that if "the Court is inclined to grant Plaintiff a preliminary injunction based on this status report, Defendants request instead that the Court set this matter for hearing in 30 days…" (*See generally* Status Report.)  After reviewing the parties' submissions, the Court set a preliminary injunction hearing for October 19, 2018. (ECF No. 40.)

On September 28, 2018, Defendants filed their Opposition to Plaintiffs' Motion for Preliminary Injunction, affirming that they had transferred all immigration detainees out of FCI Victorville effective September 14, 2018 and would no longer hold immigration detainees at the facility. (*See* Defs.' Opp'n to Mot. for Prelim. Inj. 4, ECF No. 41.)  Afterwards, on October 10, 2018, Plaintiffs filed a Notice of Withdrawal of their Motion for a Preliminary Injunction. (ECF No. 42.)  The Court granted that request and vacated the hearing. (ECF No. 43.)

On October 30, 2019, the parties filed a Joint Stipulation to Voluntarily Dismiss the Case Without Prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (ECF No. 48.) The Court dismissed all claims without prejudice and closed the case. (ECF No. 58.) Plaintiffs now seek fees incurred from June 18, 2018 through December 9, 2019. (*See* Mot.; Pls.' Reply, ECF No. 59.)

### III. LEGAL STANDARD

**A. Attorneys' Fees Under the EAJA.**

Pursuant to the EAJA, federal courts are authorized to award attorneys' fees, court costs, and other expenses. *See* 28 U.S.C. § 2412(a)(1); 28 U.S.C. § 2412(d); *Hardisty v. Astrue*, 592 F.3d 1072, 1076 (9th Cir. 2010). For the district court to award attorney's fees and costs pursuant to the EAJA, it must be shown that (1) the plaintiff is the prevailing party, (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust, and (3) the requested attorney's fees and costs are reasonable. *Murgolo v. Astrue*, 257 F. App'x 53, 54 (9th Cir. 2007).

A litigant must meet two criteria to qualify as a "prevailing party" under the EAJA. *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.,* 532 U.S. 598, 604 (2001). First, the litigant must achieve a "material alteration of the legal relationship of the parties." *Carbonell v. I.N.S.*, 429 F.3d 894, 898 (9th Cir. 2005). Second, that alteration must be "judicially sanctioned." *Id.* (citations omitted). The Ninth Circuit has "previously held that when a plaintiff wins a preliminary injunction and the case is rendered moot before final judgment, either by the passage of time or other circumstances beyond the parties' control, the plaintiff is a prevailing party eligible for a fee award." *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 717 (9th Cir. 2013) (citations omitted).

The burden of proving the substantial justification exception to the mandatory award of fees under the EAJA lies with the government. *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991). "Substantial justification" is defined as:

> justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person. [This standard] is no different from the "reasonable basis in both law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue.

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining the reasonableness of the government's position under the "totality of the circumstances" test, the court reviews the underlying governmental action being defended and the positions taken by the government in the litigation itself. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1259 (9th Cir. 2001).

"The amount of attorneys' fees awarded under EAJA must be reasonable." *Nadarajah v. Holder*, 569 F.3d 906, 910 (9th Cir. 2009). Attorney's fees for hours that are not "reasonably expended" or that are "excessive, redundant, or otherwise unnecessary" are not compensable. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "[C]ourts should generally defer to the 'winning lawyer's professional judgment as to how much time he was required to spend on the case.'" *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1136 (9th Cir. 2012) (citations omitted).

## IV. DISCUSSION

Plaintiffs assert that they are entitled to $190,718.89 in fees and costs under the EAJA. (*See* Mot.; Reply.) Defendants respond that the Court should deny Plaintiffs' Motion as: (1) Plaintiffs were not prevailing parties; (2) Defendants position was substantially justified; and (3) Plaintiffs' fees are unreasonable and should be reduced. (*See* Opp'n to Mot. ("Opp'n"), ECF No. 57.)

### A. Prevailing Party

Plaintiffs argue that they are prevailing parties because the TRO and its extensions, created a "material alteration in the legal relationships between the parties," which was "judicially sanctioned." (Mot. 8–9.) Defendants oppose by asserting that the remedial actions it took, after the Complaint was filed, made it "not necessary for Plaintiffs to continue to seek a TRO." (Opp'n 3.) Defendants further

6

argue that fees are improper due to the abbreviated schedule for opposing the TRO and as the Court never expressly ruled that Plaintiffs were likely to succeed on the merits. (Opp'n 3.) Finally, Defendants argue that without court intervention, the procedures implemented at FCI Victorville and the transfer of detainees from FCI Victorville would have occurred. (Opp'n 3.)

The Court rejects Defendants' arguments. Foremost, the actions cited by Defendants—know your rights training and communication between Lopez and Castillo—occurred only after the TRO issued. (Opp'n 2–5.) In fact, they were mandated by the TRO. (*See* TRO 6–7.) Defendants assertion that they immediately complied with the TRO does not disprove that Plaintiffs are prevailing parties. Rather, it is evidence that Plaintiffs prevailed. *Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 374 F.3d 857, 865 (9th Cir. 2004) ("[E]ssentially, in order to be considered a 'prevailing party' after *Buckhannon,* a plaintiff must not only achieve some material alteration of the legal relationship of the parties, but that change must also be judicially sanctioned.") (internal quotations and citations omitted). Here, despite Defendants moving to dissolve it, the Court's three orders extending the TRO, further demonstrates that Defendants' remedial actions were "judicially sanctioned." Accordingly, Plaintiffs are prevailing parties with regards to the TRO and any ensuing litigation to enforce it. *See Carbonell*, 429 F.3d at 901 ("[W]hen a court incorporates the terms of a voluntary agreement into an order, that order is stamped with sufficient 'judicial imprimatur' for the litigant to qualify as a prevailing party for the purpose of awarding attorney's fees.").

Defendants' argument that the Court never expressly found that Plaintiffs were likely to succeed on the merits—also fails; clearly, by granting the TRO, the Court determined that Plaintiffs were likely to succeed on the merits. (*See* TRO 5.) Likewise, the proceedings' expedited nature is irrelevant to whether Plaintiffs were prevailing parties, Plaintiffs achieving a TRO on a necessarily abbreviated timeline is sufficient to create a "judicially sanctioned," "material alteration in the legal

7

relationships between the parties." *Int'l Refugee Assistance Project v. Kelly*, 2017 WL 3263870, at *4 (C.D. Cal. July 27, 2017) (determining plaintiffs as the prevailing party even though TRO was issued on the same day that the TRO motion was made).

Finally, Defendants' attempt to attribute adoption of Plaintiffs' requested changes to their uncoerced decision-making—is contrary to the record. Plainly, the TRO, the Court-ordered extensions, and litigation necessitating Plaintiffs' fees, while the TRO was in effect, make clear that Court involvement, not Defendants' discretion, produced the changes that resulted in voluntary dismissal. *Higher Taste, Inc.*, 717 F.3d at 717 ("The defendant's action in rendering the case moot ensures that the [preliminary] injunction's alteration of the parties' legal relationship will not be undone by subsequent rulings in the litigation."); *see also Int'l Refugee Assistance Project*, 2017 WL 3263870, at *4 ("[T]hat [the government] retained discretion" to implement immigration policies following temporary restraining order "does not mean that Petitioners cannot be the prevailing party.").

Hence, Plaintiffs were prevailing parties under the EAJA.

**B.  Substantially Justified Position**

Defendants bear the burden to establish that their position, which includes both their underlying conduct and arguments during litigation, was substantially justified under the "totality of the circumstances." *Gutierrez*, 274 F.3d at 1259. The underlying conduct here is primarily Defendants' decision to hold hundreds of civil immigration detainees for approximately two weeks without access to counsel. (TRO 6 ("[T]he parties do not dispute that many of the detainees were without access to legal communication for as many as 9 to 13 days, possibly longer in Castillo's case. Defendants have made no representations regarding the status of removal proceedings for those detainees who have not had access to counsel.").)

Defendants do not and cannot dispute that holding civil immigration detainees incommunicado for such prolonged periods implicates due process concerns. *Halvorsen v. Baird*, 146 F.3d 680, 688 (9th Cir. 1998) ("There is a well established

tradition against holding prisoners incommunicado in the United States.") Instead, Defendants argue that circumstances at FCI Victorville delayed their ability to ensure due process, pointing to previously discussed measures taken in response to the Complaint and TRO. (Opp'n 5–7.) However, Defendants' pre-litigation conduct necessitated this lawsuit, and their lack of progress, post-TRO, required protracted extension of the TRO until Defendants transferred all detainees, an action finally taken on the eve of potential injunctive relief. (*See* Hr'g Tr. 39 ("I am going to be convinced that we're going to make meaningful progress or I am going to draft and enter a preliminary injunction that, well, somebody's not going to like."); *see also* Status Report 14 ("In the event that the Court is inclined to grant Plaintiff a preliminary injunction based on this status report, Defendants request instead that the Court set this matter for hearing in 30 days…").)

Defendants' assertion that confining detainees at a facility for convicted criminals complicated access to counsel does not justify Defendants' position. Instead, it is an indictment of their decision to house them there in the first place. *Colindres-Aguilar v. INS,* 819 F.2d 259, 261 n.1 (9th Cir. 1987) (noting an immigrant's right to counsel is a statutory right under 8 U.S.C. § 1362, as well as a right protected by the due process clause). This underlying action, alone, warrants a finding that Defendants' position was not substantially justified, regardless of arguments made during litigation. *United States v. Marolf*, 277 F.3d 1156, 1163–64 (9th Cir. 2002) ("A reasonable litigation position does not establish substantial justification in the face of a clearly unjustified underlying action.") (citing *Wilderness Soc'y v. Babbitt,* 5 F.3d 383, 388–89 (9th Cir. 1993) (holding government was not substantially justified despite reasonable defense in litigation); *Andrew v. Bowen,* 837 F.2d 875, 877–80 (9th Cir. 1988) (same)).

The Court therefore concludes that Defendants have not established their position was substantially justified.

## C. Reasonable Attorneys' Fees and Costs

Plaintiffs seek $190,718.89 in fees and costs incurred from June 18, 2018 through December 9, 2019, when Plaintiffs filed the Reply.[1] (*See* Reply 8–12.) Plaintiffs seek enhanced rates for attorneys Arulanantham ($785 for 2018 and $810 for 2019); Kaufman ($620 for 2018 and $645 for 2019); and Bitran ($450 for 2018 and $480 for 2019) and statutory rates for the remaining attorneys. (Mot. 16 (citing 28 U.S.C. § 2412(d)(2)(A)(ii)).) Defendants argue the underlying dispute was not complex and thus did not require the specialized skill necessary to justify enhanced rates. (Opp'n 8–9.)

"The Ninth Circuit has specifically recognized that Mr. Arulanantham's knowledge and skill warrant enhanced rates under the EAJA for his work litigating the constitutional rights of detained immigrants." *Arroyo v. United States Dep't of Homeland Sec.*, No. SACV 19-815 JGB (SHKx), 2020 WL 1228665, at *6 (C.D. Cal. Jan. 2, 2020) (citing *Nadarajah v. Holder*, 569 F.3d 906, 914 (9th Cir. 2009)). Here, as in other instances recognized by the Ninth Circuit, counsels' undisputed expertise on issues of statutory construction, detainee rights, and effective advocacy in this challenging context was needed to effectively pursue the emergency relief their clients obtained. *Nadarajah*, 569 F.3d at 915 ("Nadarajah has established and the record shows that… Arulanantham… possessed 'distinctive knowledge' and 'specialized skill' that was 'needful to the litigation in question.'") (citation omitted).

Plaintiffs cite extensive evidence establishing the specialized expertise of Arulanantham, Kaufman, and Bitran; moreover, Defendants fail to rebut this evidence. *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 980 (9th Cir. 2008) ("The party opposing the fee application has a burden of rebuttal that requires submission of evidence ... challenging the accuracy and reasonableness of the ... facts asserted by the prevailing party in its submitted affidavits.") (citations omitted). For example,

---

[1] Defendants do not dispute Plaintiffs' costs of $999.38, thus, the Court finds that these costs are well-documented, reasonable, and therefore shall be recovered. 28 U.S.C. § 2412(d)(1)(A).

Defendants do not dispute Stanford Law Professor Jayashri Srikantiah's evidence-based opinion that "this case would [not] have been successful without the particular knowledge and specialized skill that Mr. Arulanantham, Mr. Kaufman, and Ms. Bitran brought to this litigation." (Decl. of Jayashri Srikantiah, ECF No. 52 ¶ 8.) They similarly do not dispute well-grounded evidence that the rates Plaintiffs seek are equal to market-based rates for comparable services. (*See, e.g.*, Kaufman Decl. ¶¶ 32–34.) As such, the Court finds that Plaintiffs' requested enhanced rates are reasonable and justified considering the expertise needed to effectively litigate Plaintiffs' case.

Defendants also object to Plaintiffs' specific bills, claiming they are wasteful and redundant. (Opp'n 7–9.) Defendants argue that Ms. Bitran's discussion of case issues with a Congressman is not recoverable, but Plaintiffs attest to the need for this discussion, which the Ninth Circuit has held that such expenses are recoverable. *Gilbrook v. City of Westminster*, 177 F.3d 839, 877 (9th Cir. 1999) ("Prevailing civil rights counsel are entitled to fees for 'press conferences and performance of other lobbying and public relations work' when those efforts are 'directly and intimately related to the successful representation of a client.'"). The Court also finds that hours for "mass representation" and presentations that educated local immigration attorneys, about post-TRO practices for visiting FCI Victorville, are likewise "directly and intimately related to successful representation of" detainees. *Id.* These efforts were necessary to facilitate access to counsel. *Id.*

Defendants further object to Ms. Bitran's presence at the July 30, 2018 hearing, arguing that the presence of two attorneys was unnecessary given the hearing's agenda. (Opp'n 9.) However, the Ninth Circuit has held that two attorneys attending an important hearing, such as the July 30, 2018 hearing, is not redundant. *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 785 (9th Cir. 1986) ("In an important class action litigation [], the participation of more than one attorney does not constitute an unnecessary duplication of effort."). Defendants' unfounded argument is further

11

undermined by the presence of its own two attorneys at the same proceeding. (Reply 10.)

Defendants object to other various bills which Defendants perceive to be excessive given the purported lack of complexity involved in the tasks. (Opp'n 8–10.) For example, Defendants point to ten hours billed for the TRO, over thirty hours for a twelve-page brief, and five hours for Plaintiffs' reply in further support of the motion that resulted in the TRO. (Opp'n 8–10.) There is insufficient evidence before the Court to find these hours excessive or redundant. *Rutti v. Lojack Corp.*, No. SACV 06-350 DOC (JCx), 2012 WL 3151077, at *2 (C.D. Cal. July 31, 2012) ("To reduce the number of hours worked, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances.") (citations omitted). This is particularly true where, as here, the hours expended, and the proceedings' hectic nature were necessitated by Defendants. *Int'l Refugee Assistance Project*, 2017 WL 3263870, at *7 ("Petitioners' 'all hands on deck' strategy was not only understandable, it was likely a necessity… The Court declines to penalize Petitioners for operating as they did within the rushed timetable Respondents created.")

Finally, Defendants object to the hours billed by Mr. Arulanantham, claiming the billing entries are ambiguous and the work unnecessary. (Opp'n 8 (citing bills for "warehousing," habeas cases, "reinstatement," conversations with Federal Public Defender and other attorneys).) In response, Mr. Arulanantham submitted a declaration establishing the background of each disputed bill, and why the work was necessary to prosecute Plaintiffs' case. (*See* Decl. of Ahilan Arulanantham ¶¶ 5–9, ECF No. 61.) Because the Ninth Circuit instructs district courts to "defer to the 'winning lawyer's professional judgment as to how much time he was required to spend on the case,'" the Court finds that this declaration is sufficient to overrule Defendants' objection. *Costa*, 690 F.3d at 1136 (citations omitted). Such deference is further supported by the excellent outcome that resulted from counsels' zealous and

competent advocacy. *Hensley,* 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.")

Accordingly, the Court finds the request for $190,718.89 in fees and costs to be well-documented and reasonable.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' Motion for Attorneys' Fees. (ECF No. 49.) Plaintiffs' counsels are awarded $190,718.89.

**IT IS SO ORDERED.**

June 1, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**